**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| THE COMPLAINT OF DANIEL MYKOLENKO AND NOELLE MYKOLENKO, AS OWNERS OF THE S/V NADIYA, HIN# RAC4711E303, FOR EXONERATION FROM OR LIMITATION OF LIABILITY, | ) ) ) ) ) ) ) |
| Petitioners. | ) ) |

Civil No. 2018-28

**ATTORNEYS:**

**Andrew C. Simpson**
Law Offices of Andrew Simpson
St. Croix, U.S.V.I.
   *For Daniel Mykolenko and Noelle Mykolenko.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of the S/V NADIYA to approve an *ad interim* stipulation and to issue a monition and injunction.

### I. FACTUAL AND PROCEDURAL HISTORY

Daniel and Noelle Mykolenko (the "Mykolenkos") own the sailing vessel NADIYA ("NADIYA"). On September 6, 2017, the NADIYA was docked at the Compass Point Marina. The Mykolenkos hired Charter House Yacht Club to ensure that the NADIYA was safely docked during the passage of Hurricane Irma.

During Hurricane Irma, the NADIYA allegedly broke free from her moorings and struck two other vessels, the M/V Stop Talking and the Pantagon II. All three vessels were damaged. The Mykolenkos allege that the potential damage from the M/V Stop Talking and the Pantagon II are expected to exceed the post-hurricane value of the NADIYA. The Mykolenkos further allege that any damage caused by the NADIYA was not due to any fault or negligence on their part.

The Mykolenkos assert that the value of the NADIYA after Hurricane Irma is no more than $120,000. In support of their assertion, the Mykolenkos direct the Court to the declaration of Bob Goodchild, an accredited marine surveyor, and the declaration of Captain William Howe, of Howe Marine Surveys, both of whom conclude that the NADIYA is worth no more than $120,000.

On May 18, 2018, the Mykolenkos filed the instant complaint and a motion seeking approval of an ad interim stipulation and the issuance of a monition.

## II. DISCUSSION

The Limitation of Liability Act grants shipowners the right to limit liability for injury and damage claims arising out of accidents involving their vessels. *See* 46 U.S.C. § 30501, *et*

*seq.* As the Supreme Court has explained, the animating purpose of the Act:

> was to encourage shipbuilding and to induce the investment of money in this branch of industry by limiting the venture of those who build the ships to the loss of the ship itself or her freight then pending, in cases of damage or wrong happening, without the privity, or knowledge of the shipowner, and by the fault or neglect of the master or other persons on board.

*Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 214 (1927). To that end, the Act provides that the liability of a shipowner arising out of a maritime accident "shall not exceed the value of the vessel and pending freight," so long as the accident occurred "without the privity or knowledge of the owner." 46 U.S.C. § 3505. These protections extend to the owners of pleasure vessels. *See Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1228-29 (11th Cir. 1990).

Supplemental Rule F of the Federal Rules of Civil Procedure outlines the procedure to be followed in limitation actions. First, a shipowner must file a complaint in an appropriate district court within six months of receiving written notice of a claim. Fed. R. Civ. P. Supplemental Rule F(1); *see also* 46 U.S.C. § 30511(a). Thereafter, the shipowner must deposit with the court "a sum equal to the amount or value of the owner's interest in the vessel . . . , or approved security therefor." Supplemental Rule F(1); *see also* 46 U.S.C. § 20511(b)(1). If the

shipowner opts to provide the district court with approved security for the cost of the vessel, he must also give security "for interest at the rate of 6 percent per annum from the date of the security." Supplemental Rule F(1). Additionally, the shipowner must provide security for costs and "such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended." *Id.*; *see also* 46 U.S.C. § 30511(b)(1).

After a shipowner files a limited liability complaint and complies with the requirements of Supplemental Rule F(1), the district court must stay all proceedings against the shipowner that involve issues arising out of the subject matter of the limitation action. *See* Supplemental Rule F(3); 46 U.S.C. § 30511(c). The district court will then issue a monition "direct[ing] all potential claimants to file their claims against the shipowner in the district court within a specified period of time." *Gorman v. Cerasia*, 2 F.3d 519, 523 (3d Cir. 1993) (internal quotation marks omitted); *see also* 46 U.S.C. § 30511(c); Supplemental Rule F(3)-(4). Additionally, "[o]n application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Supplemental Rule F(3).

### III. <u>ANALYSIS</u>

The Mykolenkos have moved for entry of an *ad interim* stipulation and the issuance of a monition and an injunction. The Court may not issue a monition or an injunction until the *ad interim* stipulation is approved. See Supplemental Rule F(3)-(4). As such, the Court will first consider whether approval of the Mykolenkos's ad interim stipulation is appropriate.

The Mykolenkos argue that their ad interim stipulation is sufficient security that satisfies the requirements of Supplement Rule F(1) such that the Court must issue an injunction and a monition. Supplemental Rule F(1) requires a shipowner to either (1) "physical[ly] surrender . . . the vessel and pending freight to a trustee," *New York Marine Managers, Inc. v. Helena Marine Serv.*, 758 F.2d 313, 317 (8th Cir. 1985); *see also* Supplemental Rule F(1); (2) "deposit with the court . . . a sum equal to the amount or value of the owner's interest in the vessel and pending freight; or (3) deposit "approved security" for "the amount or value of the owner's interest in the vessel and pending freight." *Id.* Complying with one of these three requirements "is a condition precedent to obtaining the benefits of the Limitation Act." *New York Marine Managers, Inc.*, 758 F.2d at 317.

> Submission of an *ad interim* stipulation is one way of satisfying Rule F's requirement of the vessel or

> security for the vessel as a prerequisite to proceeding with a petition for limitation. The stipulation is *ad interim*, or temporary, so that if the value of the vessel is challenged the court may allow for 'due appraisement' of the vessel prior to entering a final order or approving a stipulation establishing the value of the vessel. 'Due appraisement' generally means appraisement proceedings which afford interested parties an opportunity to be heard and to challenge the appraisement offered by petitioner.

*Complaint of N. Lubec Mfg. & Canning Co.*, 647 F. Supp. 1132, 1134 (D. Me. 1986) (quoting Supplemental Rule F(7) (citation omitted)); *see also The Ontario No. 1*, 80 F.2d 85, 87-88 (2d Cir. 1935) (explaining that, "[a]lthough the rule is silent on the subject," a "long standing" practice permits a shipowner to "obtain ex parte the issuance of a monition and injunction if he posts an ad interim stipulation in an amount approved by the court after examining affidavits presented by [the shipowner]").

Of course, an *ad interim* stipulation must do more than simply name the sum a shipowner believes he may be obligated to pay. When a shipowner submits an *ad interim* stipulation secured by a surety bond, the stipulation is "a substitute for the vessel itself." *See Hartford Accident & Indemnity Co. v. Southern Pacific Co.*, 273 U.S. 207, 218-19, 47 S. Ct. 357, 71 L. Ed. 612 (1927)). It follows that, to qualify as "approved security," an *ad interim* stipulation secured by a surety bond should provide a guarantee of payment in line with the guarantee

afforded by holding the vessel in trust "for the benefit of [the] claimants." *See* Supplemental Rule F(1). At the very least, this should require a letter of undertaking executed by an appropriate surety. *See Karim v. Finch Shipping Co.*, No. CIV. A. 95-4169, 1998 U.S. Dist. LEXIS 16097, [WL], at *2 (E.D. La. Oct. 6, 1998), *aff'd sub nom.* 177 F.3d 978 (5th Cir. 1999) (ordering shipowner to provide additional security because the court "ha[d] concerns about the stability and reliability of the current letter of undertaking proffered by Ocean Marine [Mutual Protection & Indemnity Association, Ltd.]"); *Matter of Compania Naviera Marasia S. A., Atlantico*, 466 F. Supp. 900, 902 (S.D.N.Y. 1979) (discussing practice, in connection with ad interim stipulations, of "accept[ing] letters of undertakings given by underwriters . . . in order to avoid the detention of vessels and the expense of posting security in other forms").

Here, the Mykolenkos's *ad interim* stipulation, in pertinent part, provides that:

> Petitioners hereby undertake, jointly, severally and in solido in the sum of $120,000.00 with interest at the rate of 6% per annum from the date hereof, that Petitioners will abide by the further orders of the Court herein and will pay into the Court, whenever the Court shall so order, the amount or value of their interest in the NADIYA and her pending freight, with interest at the rate of 6% per annum, or file in this proceeding a surety bond or letter of undertaking in the usual form for the value of the NADIYA and her pending freight with interest at the rate of 6% per annum from the date hereof and costs.

ECF No. 1-2 at 2. Additionally, on February 28, 2019, the Mykolenkos filed a bond dated December 3, 2018 ("the bond"), which guarantees payment as required by Supplemental Rule F(1). The bond is underwritten by Aspen American Insurance Company ("Aspen"). According to the bond, Aspen promises to pay $120,000 with 6% interest, which the Mykolenkos assert represents the value of the NADIYA with freight pending as of September 6, 2017. Given this assurance, the Court finds that the bond is adequate security.

The premises considered, it is hereby

**ORDERED** that the Ad Interim Stipulation, which is secured by a December 3, 2018, bond underwritten by Aspen, filed herein by the Mykolenkos, in the principal amount of $120,000 with interest thereon at a rate of 6% per annum from the date thereof, is accepted and approved as to form, quantum, and surety; it is further

**ORDERED** that any claimant who may properly become a party hereto may contest the amount or value of the NADIYA and the pending freight and/or charter hire on September 6, 2017, and may move the Court for due appraisal of said interest and may apply to have the amount increased or diminished, as the case may be, or the determination of the Court of the amount or value of said interest; it is further

**ORDERED** that if the amount of said Ad Interim Stipulation is not contested by any claimant herein, said Ad Interim stipulation shall stand as a Stipulation for Value. In that case, an appraisal by a commissioner will not be required; it is further

**ORDERED** that Notice shall be issued out of and under the seal of this Court to all persons asserting claims with respect to which the Complaint seeks exoneration or limitation, admonishing them to file their respective claims with the Clerk of Court, in writing, and to serve on the attorney for the Petitioner a copy thereof no less than 30 days after issuance of notice, or be defaulted and that if any claimant desires to contest either the right to exoneration from or the right to limitation of liability, he shall file and serve on attorney for the Mykolenkos an Answer to the Complaint on or before the said date unless his claim has included an answer to the Complaint so designated, or be defaulted; it is further

**ORDERED** that the Mykolenkos shall publish the aforesaid Notice as required by Supplemental Rule F of the Federal Rules of Civil Procedure in the Virgin Islands Daily News and copies of the Notice shall also be mailed by the Mykolenkos to all known claimants in accordance with Rule F and this order; it is further

**ORDERED** that the commencement and/or further prosecution of any action or proceeding against the Mykolenkos, the NADIYA in rem, its Underwriters, or any of the Mykolenkos's property with respect to any claim for which the Mykolenkos seek exoneration from or limitation of liability, including any claim arising out of or connected in any way with any loss, damage, death, injury or destruction resulting from the casualty, alleged incident and/or accident occurring on or about September 6, 2017, which is described in the complaint filed in this Court bearing Civil Number 2018-20 be, and the same is, hereby stayed and restrained, and all prior orders, rulings or decrees issued in conjunction with any heretofore filed libels or claims be stayed and restrained until the hearing and determination of this proceeding; it is further

**ORDERED** that the Mykolenkos may make service of this Order as a restraining order through the United States Post Office by mailing a copy thereof to any persons to be restrained, or their respective attorney; and it is further

**ORDERED** that the Mykolenkos shall serve copies of the aforesaid notice upon all known claimants, as required by Rule F(4) of the Supplemental Admiralty Rules by United States mail addressed to either the claimants or, if represented by counsel, to their attorneys.

S\_____
**Curtis V. Gómez
District Judge**